**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CAROL L. LACLAIR,**

                  **Plaintiff,**                    6:12-cv-816
                                                                      (GLS)

                      v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                  **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of Peter W. Antonowicz | PETER W. ANTONOWICZ, ESQ. |
| 148 West Dominick Street | |
| Rome, NY 13440 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | KATRINA M. LEDERER |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Plaintiff Carol L. LaClair challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering LaClair's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. Background

On July 27 and August 13, 2010, LaClair filed applications for SSI and DIB, respectively, under the Social Security Act ("the Act"), alleging disability since August 14, 2009. (*See* Tr.[1] at 61, 68, 113-16.)[2] After her applications were denied, (*see id.* at 69-76), LaClair requested a hearing before an Administrative Law Judge (ALJ), which was held on June 10, 2011, (s*ee id.* at 34-60, 77). On July 29, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 9.)

[2] Although it is clear from the record that LaClair applied for SSI, (*see* Tr. at 68-76), the application is not contained in the Administrative Transcript.

Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-8, 20-33.)

LaClair commenced the present action by filing her Complaint on May 17, 2012 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 12, 13.)

### III. **Contentions**

LaClair contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 12 at 10-19.) Specifically, LaClair claims that the ALJ erred in: (1) failing to find that her depression was a severe impairment; (2) determining her residual functional capacity (RFC); and (3) finding that she could perform past relevant work. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (*See* Dkt. No. 13 at 8-13.)

### IV. **Facts**

The court adopts the parties' undisputed factual recitations. (*See*

Dkt. No. 12 at 3-8; Dkt. No. 13 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Severity Determination

First, LaClair contends that the ALJ erred in finding that her depression/dysthymic disorder was not severe under the Regulations. (*See* Dkt. No. 12 at 10-13.) Specifically, LaClair argues that the ALJ impermissibly relied on the results of a consultative psychiatric examination conducted seven years prior to her alleged disability onset date because the examiner had "programmatic expertise." (Dkt. No. 13 at 12-13.)

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the Regulations governing SSI are omitted.

4

Further, according to LaClair, the ALJ erred in characterizing her psychiatric treatment notes as "relatively normal." (*Id.*) The court disagrees.

A claimant has the burden of establishing that she has a "severe impairment," which is "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). As pertinent here, basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b)(3)-(6). An ALJ's evaluation of a claimant's mental impairments must reflect his application of the "special technique" set out in 20 C.F.R. § 404.1520a, which necessitates his consideration of "four broad functional areas" that include: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme."

*Id.* § 404.1520a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe.'" *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1520a(d)(1)).

Here, the ALJ determined that LaClair suffered mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation. (*See* Tr. at 26.) Thus, he concluded that her depression was not severe. (*See id.* at 25-26.) The ALJ based his decision on the results of LaClair's consultative examinations in September 2002 and October 2010, as well as the mental status examinations conducted by treating psychiatrist Stephen Hudyncia. (*See id.* at 26, 225-29, 236-44, 610-18, 667-76.)

LaClair points to notes in Dr. Hudyncia's treatment records that she was dysphoric, had difficulty sleeping, and practiced self-cutting, to support her view that her depression was a severe impairment. (*See* Dkt. No. 12 at 7-8, 11-12.) However, "whether there is substantial evidence supporting the appellant's view is not the question," instead, the court must "decide

whether substantial evidence supports *the ALJ's decision.*" *Bonet ex rel. T.B. v. Colvin*, No. 12-4186-cv, 2013 WL 3214890, at *1 (2d. Cir. June 27, 2013). LaClair also argues that the ALJ employed "gross and inartful speculation" when he noted that Dr. Hudyncia's notes were "relatively normal." (Dkt. No. 12 at 12-13.) Semantics aside, on numerous occasions Dr. Hudyncia's mental status examinations merely revealed that LaClair was polite, pleasant, and practiced good hygiene. (*See* Tr. at 236-38, 242, 675-76.) Upon examination in October 2010 by psychiatrist David Stang, LaClair was articulate and verbal and her demeanor was pleasant until she talked about her ex-husband. (*See* Tr. at 610-18.) Her thought processes were organized and goal directed, affect was full, and insight and judgment were adequate. (*See id.* at 617.) Dr. Stang observed "several brief instances of lapses in working memory, which support her claims of focusing problems." (*Id.*) However, LaClair also reported that she was capable of daily grooming, cooking and preparing her own food, shopping, cleaning her apartment, doing laundry, managing money, and caring for her dog. (*See id.* at 617-18.) She additionally reported maintaining regular contact with her mother and children, and interacting with friends on Facebook. (*See id.* at 617.) Finally, in November 2010, psychiatric

7

consultant D. Mangold reviewed the medical evidence of record and opined that LaClair's "psychiatric impairment is non severe." (*Id.* at 636.)[4]

Ultimately, substantial evidence supports the ALJ's determination that LaClair's depression was not severe. (*See id.* at 26.) Moreover, in making his RFC determination, the ALJ considered LaClair's complaints of depression, and weighed the psychiatric opinion evidence before him. (*See id.* at 27-28.) As the disability analysis continued and the ALJ considered claimant's severe and non-severe impairments in his RFC determination, any error at step two is, at most, harmless. *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

**B.    RFC Determination**

Next, LaClair argues that the RFC[5] determination is unsupported by

---

[4] LaClair argues that the ALJ erred in crediting the psychiatric consultant due to his "programmatic expertise" without defining that term. (Tr. at 28; *see* Dkt. No. 12 at 13.) However, it is clear the ALJ was appropriately considering "the amount of understanding of [the Commissioner's] disability programs and their evidentiary requirements" that this medical source possessed, in determining how much weight to give his opinion. 20 C.F.R. § 404.1527(c)(6).

[5] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in

8

substantial evidence because the Appeals Council failed to afford significant weight to the opinion of treating physician Nathaniel Gould. (*See* Dkt. No. 12 at 13-16.) Further, LaClair contends that, even if not severe, her depression should have been considered in the determination of her RFC, and, thus, the Appeals Council should have weighed the opinion of her treating therapist Cynthia LaPolla. (*See id.* at 16-18.) This argument is also unavailing.

    Here, the ALJ determined that LaClair retained the RFC to perform the full range of light work, including the ability to lift/carry twenty pounds occasionally and ten pounds frequently, engage in postural movements occasionally, and, in an eight-hour work workday, sit for six hours and stand/walk for six hours. (*See* Tr. at 26-28.) The ALJ relied on the opinion of Dr. Kristen Barry who performed a consultative psychiatric examination in September 2002, as well as Dr. Adrian Przybyla who performed a consultative internal medicine examination in November 2010. (*See id.* at 28, 225-29, 619-23.) The ALJ also gave significant weight to the November 2010 opinion of psychiatric consultant D. Mangold. (*See id.* at

---

the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

9

28, 624-37.)

Following issuance of the ALJ's decision, but prior to a determination by the Appeals Council, LaClair submitted additional treatment notes as well as Medical Source Statements from Dr. Gould, who treated her for back pain. (*See id.* at 713-53.) In July 2011, Dr. Gould opined that LaClair could lift and carry ten pounds frequently and twenty pounds occasionally. (*See id.* at 737-42.) Further, he reported that she could sit, stand, and walk for one hour at a time, and, in an eight-hour day, sit for a total of three hours, stand for two hours, and walk for two hours. (*See id.* at 738.) LaClair could use her hands to reach, handle, finger, push, and pull continuously, as well as operate foot controls continuously. (*See id.* at 739.) Additionally, she could occasionally climb, balance, and stoop, and frequently kneel, crouch, and crawl. (*See id.* at 740.) Thereafter, in September 2011, Dr. Gould completed a second Medical Source Statement regarding LaClair's ability to do work related activities. (*See id.* at 747-53.) The September 2011 opinion differed from his earlier opinion in several ways. (*Compare id.* at 737-42 *with id.* at 747-53.) Dr. Gould now opined that LaClair could only sit, stand, and walk for fifteen minutes at a time, and, in an eight-hour day, could sit for four hours, stand for one

hour, and walk for one hour. (*See id* at 749.) Further, Dr. Gould reported that LaClair could only occasionally handle with her right hand, frequently operate foot controls, and occasionally kneel, crouch, or crawl. (*See id.* at 750-51.)

LaClair also submitted to the Appeals Council the opinion of LaPolla, who, among other things, opined that LaClair was not able to complete a normal workday and workweek without interruptions from psychiatric symptoms, and was effectively precluded from working in close proximity to others without being distracted, performing at a consistent pace, and adapting to pressures and changes in a routine work setting. (*See id.* at 755-57.) According to LaPolla, LaClair suffered a moderate limitation in her ability to maintain attention and concentration for extended periods, stay on task without supervision, and interact appropriately with the general public, coworkers, and peers. (*See id.* at 755-56.) Further, LaClair would miss more than three days a month, on average, due to her depression. (*See id.* at 756.)

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.976(b)(1); *see Perez*, 77 F.3d at 45. The Appeals Council

"will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). However, even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Perez*, 77 F.3d at 45 (internal quotation marks and citation omitted). Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. *Id*. at 45-46.

Here, the additional evidence LaClair submitted after the ALJ's determination was noted by the Appeals Council in its denial of review. (*See* Tr. at 1-4.) Specifically, the Appeals Council considered Dr. Gould's opinions and noted that they "include little rationale for their findings and do not appear to be supported by the record." (*Id.* at 2.) Thus, although the Appeals Council failed to methodically discuss each individual factor under the Regulations, the assessment of Dr. Gould's opinion is legally sound. *See* 20 C.F.R. § 404.1527(c)(2)-(6); SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case.").

Further, the Appeals Council's assessment of Dr. Gould's opinions is supported by substantial evidence. Specifically, Dr. Przybyla examined LaClair in October 2010 and noted that her fine finger skills were normal in both hands, grip strength was 5/5, bilateral upper extremity strength was 5/5, and bilateral lower extremity strength was 4/5. (*See* Tr. at 619-23.) Sensation was normal in all of her extremities, her reflexes were "2+ in the bilateral lower extremities," and her "cranial nerves [two] through [twelve were] grossly intact. (*Id.* at 620-21.) Straight leg raising was positive on the left side, and her lumbar spine range of motion was limited on lateral flexion. (*See id.* at 621, 623.) Based on this examination, Dr. Przybyla opined that LaClair would have difficulty lifting heavy objects or performing repetitive bending, but would have no difficulty with sitting for one to two hours at a time. (*See id.* at 621.) Thereafter, in June 2011 she was examined by neurosurgical consultant Gregory Canute, and found to have a normal gait and station, 5/5 motor strength in all muscle groups in her upper and lower extremities, with good tone and no evidence of atrophy. (*See id.* at 709-12.) In addition, her cranial nerves were intact, sensation was intact, reflexes were 2+ bilaterally, and she was able to heel and toe walk. (*See id.* at 711.) Dr. Canute reviewed a May 2011 MRI of LaClair's

lumbosacral spine and noted that there was no "evidence of significant spinal canal stenosis or foraminal stenosis causing any significant pressure of any nerve roots anywhere," although she had a "slight retrolisthesis of L4 on L5 with a degenerative disc." (*Id.* at 712.) In addition to her examination results, an EMG in September 2010 showed no abnormalities to suggest she had radioculopathy or neuropathy. (*See id.* at 677.) Finally, as the ALJ noted, her October 2010 drug screen was negative for prescribed medications and positive for non-prescribed medications, indicating that she was not compliant with her prescribed treatment. (*See id.* at 27, 721.)

Turning to the opinion of LaPolla, the Appeal Council considered the opinion of the "non-physician," and determined that it did not provide a basis for changing the ALJ's decision. (*See id.* at 2.) Indeed, therapists are not acceptable medical sources, whose opinions are entitled to controlling weight. *See* 20 C.F.R. § 404.1513(a), (d). Thus, her opinion does not add so much to the record as to displace the substantial evidence supporting the ALJ's determination, specifically, the examination results of Dr. Stang and the opinion of Dr. Mangold. (*See id.* at 26-28.)

**C.   Past Relevant Work**

Finally, LaClair argues that, because the ALJ erred in failing to find her mental impairment severe and include nonexertional limitations in his RFC determination, the ALJ's determination at step four is improper. (*See* Dkt. No. 12 at 18-19.) As discussed above, however, the ALJ's severity determination and RFC findings were legally sound and are supported by substantial evidence. As such, LaClair's contention is without merit.

## D.     Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and LaClair's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 16, 2013
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court